IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KATHY L. CARROLL,
individually and as Administratrix
of the Estate of R.M. Carroll,

        Plaintiff,

v.                                CIVIL ACTION NO.  3:12-5985

JPMORGAN CHASE BANK, N.A., and
WELLS FARGO BANK, N.A.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the amended partial motion to dismiss (ECF No. 8), filed by Defendants J.P. Morgan Chase Bank, N.A. (hereinafter "Chase") and Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"). For the reasons stated below, this motion is **DENIED.**

**Statement of Facts**

Plaintiff Kathy L. Carroll, acting individually and as Administratrix of the estate of her deceased husband R.M. Carroll, commenced the instant case against Chase and Wells Fargo in the Circuit Court of Cabell County, West Virginia. Defendants removed this case to federal court based upon diversity of citizenship. The Complaint alleges that in 2003 Aegis Funding Corporation ("Aegis") solicited Plaintiff and her husband to refinance their home, and in connection therewith Aegis intentionally obtained an inflated appraisal—as was its practice— which wrongfully valued the home to be worth at least $290,000. Aegis then originated a $290,000 loan, with a 10.5% interest rate, based on the appraisal. Plaintiff and her husband

allegedly were unaware of the overvaluation until August 2012, and Plaintiff states she would not have entered into the loan had she known that the appraisal overvalued the home. Mr. Carroll died in 2007, and thereafter Plaintiff had difficulty paying back the loan.

Wells Fargo is alleged to be trustee for the Aegis security involved in this case and to be the current holder of Plaintiff's loan. Chase is the loan's current servicer. Plaintiff alleges that she asked Chase for loss mitigation in 2008, but that Chase did not respond. She states that as a result of this predatory lending, she has suffered damages in the form of "excess loan amount and interest, annoyance and inconvenience, and fear of the loss of her home." ECF No. 1-1 (hereinafter "Compl."), ¶ 16. Specifically, she brings claims for unconscionable inducement (Count I), fraud (Count II), and joint venture and agency (Count III).

Defendants Chase and Wells Fargo filed the pending amended partial motion to dismiss. ECF No. 8. In support thereof, Defendants argue that the claim for unconscionable inducement should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the claim contains only conclusory allegations. Also, Defendants argue that the claim for joint venture and agency should be dismissed under Rule 12(b)(6) because it is not a recognized cause of action. After discussing the standard of review for a motion to dismiss, the Court will examine Plaintiff's claim for unconscionable inducement. The Court will then turn to the claim for joint venture and agency.

## I. Standard of Review

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place,

courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . .." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-

specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. Additionally, this "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citation omitted). If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## II. Claim for Unconscionable Inducement

West Virginia requires that the following elements be proven to satisfy a claim for unconscionability or inducement by unconscionable conduct:

> (1) With respect to a transaction which is or gives rise to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds:
>
>   (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
>
>   (b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result.
>
> (2) If it is claimed or appears to the court that the agreement or transaction or any term or part thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination.

> (3) For the purpose of this section, a charge or practice expressly permitted by this chapter is not unconscionable.

W. Va. Code § 46A-2-121. Under West Virginia law, "inequity of bargaining power alone does not indicate an unconscionable contract." *Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 636 (S.D. W. Va. 2001) (footnote omitted). Rather, "[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" Syl. Pt. 4, *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co.*, 413 S.E.2d 670 (W. Va. 1991). The court should also consider "the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." *Orlando v. Finance One of West Virginia, Inc.,* 369 S.E.2d 882, 885 (W. Va. 1988). "[G]ross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion or may show that the weaker party had no meaningful, no real alternative, . . . to the unfair terms. " *Id*. at 674-75 (citations omitted).

Furthermore, to be found unconscionable pursuant to West Virginia law, the contract must exhibit both procedural and substantive unconscionability. *State ex rel. Johnson Controls, Inc. v. Tucker*, 729 S.E.2d 808, 820-21 (W. Va. 2012). Procedural unconscionability addresses "inequities, improprieties, or unfairness in the bargaining process and formation of the contract," and "[t]hese inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed . . . ." Syl. Pt. 7, *Id.* (quoting Syl. Pt. 17, *Brown v. Genesis Healthcare Corp.,* 724 S.E.2d 250 (W. Va. 2011)). In contrast, substantive unconscionability deals with "unfairness in the contract itself and whether a

contract term is one-sided and will have an overly harsh effect on the disadvantaged party," including "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Syl. Pt. 8, *Id.* (quoting Syl. Pt. 19, *Brown,* 724 S.E.2d 250).

Plaintiff claims that the loan itself was unconscionable when it was made, and that it is unenforceable because it was induced by unconscionable conduct. In support of this claim, Plaintiff alleges that she and her husband were unsophisticated consumers, and that she, having only an eighth-grade education, did not understand the transaction details. Compl. ¶¶ 2, 18. She further alleges that "[t]he loan contains several substantively unfair terms that came as a surprise to Plaintiff, including but not limited to the fact that the loan far exceeds the market value of the Plaintiff's home." *Id.* ¶ 19. Additionally, Plaintiff points to Aegis's pattern of predatory lending. *Id.* ¶ 20.

Defendants point out the similarities between the present claim and that in *Corder v. Countrywide Home Loans, Inc.*, No. 2:10-cv-0738, 2011 WL 289343 (S.D. W. Va. Jan. 26, 2011). In *Corder*, the court dismissed plaintiff homeowner's claim that his home loan agreement was unconscionable. The language of Mr. Corder's unconscionability claim bears remarkable similarity, sometimes word-for-word, to Plaintiff's Complaint, particularly Mr. Corder's allegations that:

> 49. The Plaintiff is an unsophisticated consumer and did not understand the details of the transaction.
> 51. The loan contains several substantively unfair terms, including but not limited to the fact that the loan far exceeds the market value of the Plaintiffs home.
> 52. The Defendants have a pattern of intentionally inflating the market value of homes to support predatory loans that exceed the market value of the borrowers' homes.

> 53. The loan issued the Plaintiff was unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct, and therefore was unenforceable.

*Corder*, 2011 WL 289343, at *9 (citing Mr. Corder's complaint).

The Court in *Corder* found the allegations insufficient because: 1) the allegation of being "unsophisticated" was conclusory, with no factual support; 2) the amount or manner of inflation was not specified; 3) whether there was a pattern of predatory lending was, at most, marginally relevant, and 4) "the alleged fact that the loan 'far exceeds' the market value of the Plaintiffs home does not, by itself, support the inference that the loan terms were unconscionable at the time of the transaction (especially if Corder means that the loan exceeds the *current* market value of the home, which could just be a result of declining property values)." *Id.* at *9.

*Corder* is distinguishable from the instant case. After examining the Complaint, the Court finds that Plaintiff has sufficiently pled procedural unconscionability. Plaintiff's pleading of being an unsophisticated consumer is bolstered by her statement that she has an eighth-grade education. Although the Complaint and other pleadings do not elaborate on Aegis's corporate power—except to say that Aegis is currently "defunct"—that fact that Aegis's loan has now come under the power of national prominent banks Chase and Wells Fargo creates an inference of significant corporate power throughout the existence of the loan. This corporate strength, when contrasted with Plaintiff's status, indicates gross inadequacy of bargaining power. *See Koontz v. Wells Fargo, N.A.*, 2:10-cv-00864, 2011 WL 1297519, at *5 (S.D. W. Va. Mar. 31, 2011) (citing *Arnold v. United Companies Lending Corp.*, 511 S.E.2d 854, 861 (W. Va. 1998)) ("She alleges that she is unsophisticated in financial matters, and the complaint identifies Wells Fargo as a large, national lending institution. These allegations, taken in the light most favorable

to Plaintiff, raise a question as to the parties' relative bargaining positions."). Furthermore, according to the Complaint, Aegis solicited Plaintiff and her husband to refinance their home. Compl. ¶ 6. Plaintiff's allegation that Aegis solicited her and her husband to become victims of a pattern of predatory lending creates further suspicion concerning the loan process. Admittedly, the allegations of procedural unconscionability here do not necessarily involve the same sorts of deception alleged in other cases. *See Robinson v. Quicken Loans Inc.*, No. 3:12-cv-0981, 2012 WL 3670391 (S.D. W. Va. Aug. 24, 2012) (finding that procedural unconscionability was sufficiently pled where, *inter alia*, the plaintiff had received an adjustable-rate home equity loan, although she initially requested a fixed-rate loan, and her monthly payments increased, which the defendant said would not happen); *see also Koontz*, 2011 WL 1297519, at *5 (alleging that the closing was rushed, the plaintiff thought she had to go through with the mortgage, Wells Fargo made misrepresentations about the interest rate, and the plaintiff was an unsophisticated consumer). Nonetheless, Plaintiff's pleading of procedural unconscionability satisfies Rule 8.

Additionally, Plaintiff has sufficiently pled substantive unconscionability. Plaintiff pled that the appraisal was intentionally inflated and false, and that the loan of $290,000—which was given based on the inflated appraisal—"greatly exceeded" the home's market value, which was approximately $180,300.[1] Although Plaintiff does not explicitly state to what date the $180,300 alleged market value corresponds, the structure of the Complaint clearly implies that the home had a market value of approximately $180,300 at the time of the appraisal:

---

[1] Although Plaintiff's Response to the motion to dismiss claims that the interest rate of 10.5% was excessive and therefore further bolsters her claim of unconscionability, Plaintiff's Complaint never alleges that the interest rate was excessive; instead the Complaint simply states what the rate was. *See* Compl. ¶9(b). Therefore, the interest rate will not be considered as factual evidence supporting the unconscionability claim.

8

> 8. (a) On information and belief Aegis's appraiser provided an appraisal valuing the Plaintiff's home at or above $290,000.00. This was false.
> (b) The actual value of Plaintiff's home was approximately $180,300.00.
> 9. (a) Based on the inflated appraisal, on October 29, 2003 Aegis originated a loan in the amount of $290,000.00, which unbeknownst to Plaintiff or her husband greatly exceeded the actual market value of Plaintiff's home.

Compl. Therefore, Plaintiff's pleading of unconscionability bears similarity to that in *Robinson*, where this Court found that the plaintiff had sufficiently pled substantive unconscionability. *See Robinson*, 2012 WL 3670391, at *2 (noting that the plaintiff alleged both the amount of the loan and the home's actual value at the time of the appraisal); *see also Watkins v. Wells Fargo Home Mortg.*, 631 F. Supp. 2d 776, 788 (S.D. W. Va. 2008) (this Court holding that the plaintiff sufficiently pled unconscionability, where the plaintiff was induced to enter into a loan because of an inflated appraisal and the underlying complaint alleged the home's value at the time of the appraisal). Furthermore, Plaintiff's pleading can be distinguished from that in *Corder*, which did not allege the amount by which the home was overvalued at the time of the contract. *Corder*, 2011 WL 289343, at *9 (dismissing unconscionability claim). Therefore, the Court **DENIES** Defendant's motion to dismiss Count I.

### III. Claim for Joint Venture and Agency

Plaintiff also alleges that Wells Fargo and Aegis satisfy the requirements for joint venture and agency, and seeks a declaration from the Court that Wells Fargo is liable for Aegis's acts and omissions. Defendants argue that joint venture and agency is not a recognized cause of action, mandating dismissal under Rule 12(b)(6). They do not plead in the alternative that, even if this is a cause of action, Plaintiff's claim fails to satisfy the pleading standards of Rule 8.

Defendants argue that joint venture and agency is not a recognized cause of action, based on the reasoning of *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). In *Dunn*, the Supreme

9

Court of Appeals held that "civil conspiracy [under West Virginia law] is not a *per se,* stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Id.* at 269. Defendants here argue that joint venture and agency, like civil conspiracy, is also a theory of liability, and therefore also not a cause of action.

However, subsequent cases have precisely dealt with the issue of *Dunn*'s application to joint venture and agency claims, and have held that joint venture and agency is a cause of action. The defendant in *Croye v. GreenPoint Mortg. Funding, Inc.*, 740 F. Supp. 2d 788 (S.D. W. Va. 2010), pointed to *Dunn*'s reasoning to support the argument that joint venture is not a cause of action. That court noted as follows:

> The court is not persuaded by the analogy [defendant] GreenPoint draws from *Dunn*. The language in *Dunn* does not suggest that civil conspiracy is not a permissible cause of action generally. It simply states that it is not a claim that can stand alone without claims for the underlying torts. Here, plaintiffs have alleged joint venture in addition to those claims for which it seeks to impose joint venture liability. Significantly, *Dunn* did not result in the dismissal of the civil conspiracy claim for failure to state a cognizable cause of action. Rather, the court assigned the applicable statute of limitations for the underlying tort claims to the civil conspiracy claim in order to determine whether it was time barred. Moreover, plaintiffs in several West Virginia cases have asserted joint venture claims wherein the concept of joint venture has been recognized.

*Id.* at 799 (citations omitted); *see also Proffitt v. Greenlight Fin. Services*, No. 2:09-cv-1180, 2011 WL 1485576, at *4 (S.D. W. Va. Apr. 19, 2011) (finding, based on *Croye*, that joint venture and agency claim could proceed as a cause of action, where the plaintiffs had also brought claim for unconscionable conduct); *Holmes v. Runyan & Assoc., Inc.*, No. 2:09-cv-0679, 2010 WL 2218698, at *2-3 (S.D. W. Va. June 2, 2010) (rejecting analogy to *Dunn* and finding that joint venture is permissible claim). Agency is a permissible claim as well. *Proffit*, 2011 WL

10

1485576, at *4; *see Croye*, 740 F. Supp. 2d at 801 (analyzing agency claim on motion for summary judgment).

As mentioned above, Defendants have not argued in any of their pleadings that, if joint venture and agency is a cause of action, that Plaintiff's claim should instead be dismissed because it is not sufficiently pled. Therefore, the Court need not address that issue, and hereby denies Defendant's motion to dismiss Count III.

## Conclusion

For the reasons stated above, the amended partial motion to dismiss (ECF No. 8) is **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: January 16, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE